## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

SONYA R. KAYSE,                              )
                                             )
                            Plaintiff,       )
            vs.                              )          1:06-cv-1038-SEB-JMS
                                             )
                                             )
MICHAEL J. ASTRUE, Commissioner              )
 of the Social Security Administration,      )
                                             )
                            Defendant.[1]    )

### Entry Discussing Complaint for Judicial Review

Sonya R. Kayse ("Kayse") seeks judicial review of the discontinuance by the Commissioner of the Social Security Administration ("Commissioner") of her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I.  BACKGROUND

Kayse was found to be disabled beginning July 26, 1997, based on applications for DIB and SSI filed on March 25, 1998. She was found to be disabled based on her seizure disorder, which met the requirements of a listing. In 2002, the Commissioner determined that Kayse's disability ceased as of August 1, 2002. Kayse requested reconsisderation, and following administrative denials, she requested a hearing. Hearings were held on February 15, 2005, and May 24, 2005, in Cincinnati, Ohio. Kayse appeared at the hearings.  Kayse, her mother, her sister and a vocational expert testified at the May 2005 hearing.

The Administrative Law Judge ("ALJ") issued his decision on August 16, 2005, finding that although Kayse suffered from severe impairments of a seizure disorder, anxiety, and a bipolar disorder, her medical condition had improved and she could perform a significant range of work. The ALJ concluded that Kayse's eligibility for DIB and SSI ended effective October 31, 2002, two months after the month in which her disability ceased.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

On June 22, 2006, the Appeals Council denied Kayse's request for review, making the ALJ's decision final, *see Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Kayse was found to be disabled within the meaning of the Act beginning July 26, 1997, and she has not engaged in substantial gainful activity since that date; (2) the impairments present as of the comparison point decision ("CPD") of October 8, 1998, were a seizure disorder and obesity; (3) Kayse's seizure disorder met the severity of Listing 11.02 of the Listing of Impairments at the time of the CPD; (4) the medical evidence established that Kayse did not currently have an impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4; (5) based on the medical evidence, there has been medical improvement in Kayse's condition since the CPD of October 8, 1998; (6) this medical improvement is related to Kayse's ability to work; (7) none of the exceptions to the medical improvement standard apply; (8) the medical evidence established that Kayes has a seizure disorder, anxiety, and a bipolar disorder which are severe impairments, but her obesity and back problem are not limiting or severe; (9) Kayse's allegations regarding her symptoms and functional limitations were not supported by the medical evidence, and they were not fully credible; (10) Kayse could perform simple, routine, repetitive work that involves no contact with the general public and only minimal contact with coworkers, she is unable to work around heights, hazards such as dangerous machinery, and she is unable to drive; (11) Kayse's past relevant work as a dishwasher did not require the performance of work-related activities precluded by her residual functional capacity ("RFC"); (12) Kayse's medically determinable impairments did not prevent her from performing her past relevant work, and as noted in the decision, she could also do other work that exists in significant numbers in the economy and that are consistent with her vocational profile; (13) Kayse had a high school education, and transferability of skills is not an issue in this case; and (14) Kayse had the RFC to perform a significant range of work. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Kayse was no longer disabled, her disability ceased August 1, 2002, and she was not under a "disability" as defined in the Act at any time after that date.

## II. DISCUSSION

### A.  Applicable Law

A claimant who experiences medical improvement related to her ability to engage in work may lose her eligibility to receive benefits if there is an improvement in the claimant's condition. The Social Security regulations define medical improvement as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the

time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i).

> A recipient of benefits . . .  may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such a finding is supported by- -
>
> (1) substantial evidence which demonstrates that- -
>
>  (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>  (B) the individual is now able to engage in substantial gainful activity;
>  . . .

42 U.S.C. § 423(f).

 In reaching her decision to deny benefits, the ALJ followed the eight-step inquiry outlined in Social Security regulations which is used to determine whether a claimant's disability continues. (R. at 29-30, citing 20 C.F.R. § 404.1594(f); 20 C.F.R. § 416.994(b)(5)).  The eight inquiries are the following:

> (1) Is the recipient engaging in substantial gainful employment? (If yes and there is no issue of a trial work period, the disability has ended.)
> (2) If not engaging in substantial gainful employment, does the recipient have an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (If yes, the disability is found to be continuing.)
> (3) If no, has there been medical improvement in the condition which was originally found to be disabling?  (If no, the disability is usually found to continue.)
> (4) If there has been medical improvement, is it related to the ability of the recipient to do work?  (If no, disability is probably found to be continuing, subject to step 5.)
> (5) This step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4.
> (6) If medical improvement is shown, are the recipient's current impairments nonetheless severe?  (If no, disability ceases.)
> (7) If the current impairments are severe, can the recipient do the work she did before determined to be disabled?  (If yes, the disability ceases.)
> (8) If the recipient cannot do the work done in the past, can the recipient do other work?

20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.    Analysis

The ALJ determined that although Kayse continued to have severe impairments, there had been medical improvement and she was no longer disabled effective August 1, 2002. Kayse was not represented by counsel at the administrative hearings.

The first issue is whether Kayse validly waived her right to counsel. A Social Security claimant has a statutory right to representation at her disability hearing.  42 U.S.C. § 406; 20 C.F.R. §§ 416.1500, 404.1700;  *Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991). If a claimant is properly informed of that right, it may be waived.  *Binion,* 13 F.3d at 245.  The waiver of the right to counsel, however, must be knowingly and intelligently made. *Thompson*, 933 F.2d at 584. To ensure a valid waiver of the right to counsel, a *pro se* claimant must be advised of: "(1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."  *Binion,* 13 F.3d at 245.

At the February 15, 2005, hearing, the ALJ informed Kayse that she had the right to representation, to which Kayse responded, "I tried to get that." (R. at 383, 386). The ALJ then stated:

> What I want to do is I'm going to give you some  - - a paper showing of agencies that represent claimants for free.  Some attorneys take them on contingency fee basis.  If there's back due benefits they would take some of those as in payment of your case if you're granted a favorable Decision.  If not, they would not get paid.   Have you given thought to getting an attorney?

(R. at 386-87).

Kayse responded, "yes," and informed the ALJ that she had contacted an attorney who said he would come to the hospital while she was there so he could fill out papers to obtain her file, but "he never showed up."  (R. at 387).  The ALJ stated:

> I'm going to give you appointment of representation form, a return envelope. If you get an attorney they would have to fill out that form to have access to your file.   I'm also going to give you information about agencies that represent claimants for free.  If you want an attorney by the second hearing

4

you need to go out immediately and find one.  Do not wait until a week before that hearing and then call and say I haven't gotten an attorney yet.

* * *

I will not continue the case.  I mean, people are waiting a year or two for their hearing.  It's too valuable for me to schedule something and not have you show up even though I've given you a right to an attorney.  So you don't have to tell me today if you're going to get one but if you do you need to do that immediately.  All right?

(R. at 387).

Kayse told the ALJ that she had gone to legal aid and a couple other places that were listed on the papers. *Id.* The ALJ continued to ask Kayse questions about where she had received treatment, Kayse signed authorization forms, and the ALJ told Kayse she would write to the medical providers and attempt to obtain additional records. (R. at 393).

At the second hearing, held on May 24, 2005, Kayse appeared without counsel. The ALJ stated,

We had a pre-hearing conference on February 15 of 2005 at which time the Claimant was present and she is not represented. At that time, I advised her of her right to representation, gave her information about legal services would have represented her for free.  She was told if she came today without an attorney that we would continue with the hearing. Remember that, ma'am?

(R. at 399).

Kayse responded, "yes."  *Id.* The ALJ then proceeded to conduct the hearing.

At no time was Kayse asked whether she wished to waive her right to counsel. Kayse did not state that she did not want an attorney to represent her, or that she wanted to waive her right to counsel. The fact that she appeared without counsel was taken as a waiver.  The record does not reflect that Kayse knowingly and intelligently decided to waive counsel. Rather, it appears that she simply could not locate an attorney before the date of her hearing.

Assuming that there was an inadequate waiver of the right to counsel, that does not automatically entitle Kayse to a remand unless the ALJ also failed in her assigned duty to develop a full and fair record. *Binion,* 13 F.3d at 245; *Thompson*, 933 F.2d at 585-86. "Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty scrupulously and conscientiously [to] probe into, inquire of and explore for all of the relevant facts . . . ." *Binion*, 13 F.3d at 245 (internal quotations and citation omitted). "The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met

if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Id.* If the ALJ does not obtain a valid waiver, the burden is on the Commissioner to show that the ALJ fully and fairly developed the record. *Nelson v. Apfel,* 131 F.3d 1228, 1235 n.3 (7th Cir. 1997); *Binion*, 13 F.3d at 245. If the Commissioner shows that the ALJ fully and fairly developed the record, the plaintiff may rebut such showing by demonstrating prejudice or an evidentiary gap. *Id.* Courts will usually require a "significant omission," meaning prejudice, before finding that the record has not been adequately developed in a *pro se* case. *Nelson,* 131 F.3d at 1235; *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir.1994). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246.

Kayse argues that the ALJ failed to carry out her heightened duty to develop the record. She contends, specifically, that the ALJ failed to consider the effect of Social Security Ruling ("SSR") 02-1p on her case. Kayse contends that question 11 of SSR 02-1p directs that benefits for claimants who were found eligible for benefits based on meeting or equaling Listing 9.09 (the obesity Listing which has since been deleted), will not be discontinued if they continue to meet or equal that listing. SSR 02-1p, 67 FR 57859-02 (Sept. 12, 2002).   The Commissioner correctly points out that Kayse was not found disabled in 1997 pursuant to Listing 9.09, and therefore, SSR 02-1p does not control this case. Rather, Kayse was found disabled because she met Listing 11.02 relating to her seizure disorders. (R. at 38).   Moreover, the ALJ did consider Kayse's obesity in combination with her other impairments. (R. at 31, 33). Accordingly, Kayse's argument that the ALJ failed to fully develop the record as to the applicability of SSR 02-1p is not persuasive.

Kayse further argues that the ALJ failed to carry out her heightened duty of developing the record on the issue of the frequency and severity of her seizures. Kayse contends that the ALJ should have contacted treating sources to determine the number and severity of Kayse's seizures in 2004 and 2005. The medical records indicate that while hospitalized from January 30, 2005, through February 4, 2005, Kayse reported that she had 15 seizures a year, grand mal and petit mal combined, (R. at 362, 377), with the petit mal seizures occurring more frequently than the grand mal. (R. at 369). One record indicates that the petit mal seizures occurred 15 times a year. (R. at 365).  Kayse testified at the hearing that she had the grand mal seizures maybe three to five times a year.[2]  (R. at 404).

---

[2]Kayse further testified, however, that she experienced the "small" seizures, where she stares for 10 -15 seconds and cannot hear those around her, approximately 5-6 times a day.  (R. at 406-07).  The ALJ discussed this testimony, but found it not credible in light of Kayse's statements to physicians in 2005, indicating that she had a total of 15 seizures in one year. (R. at 33).

Kayse argues that the record is not clear whether the 15 seizures each year were grand mal or petit mal seizures, citing to R. 362.[3]  She argues that if the seizures were all grand mal, Kayse's impairment would satisfy Listing 11.02. The factual basis for the argument, however, is not persuasive because the hospital records indicate that she reported more petit mal seizures than grand mal, and that in combination, they totaled approximately 15 seizures a year. (R. at 369, 377). Indeed, one record, as noted above, indicates that Kayse had 15 of the petit mal seizures a year. (R. at 365).  Kayse testified that she had three to five grand mal seizures a year.  (R. at 404). There is no evidence that Kayse experienced more of the grand mal seizures than the petit mal seizures. The evidence does not support a finding that Kayse's impairment continued to satisfy Listing 11.02. Given the record and Kayse's consistent testimony concerning the grand mal seizures, there was no basis for the ALJ to have sought out additional information as to the frequency thereof.

In sum, the ALJ probed Kayse's disabilities and obtained the relevant evidence. Kayse has not demonstrated a significant omission or an evidentiary gap which compels a finding that the record has not been adequately developed.  Accordingly, the failure to obtain a proper waiver of counsel does not require a remand under these circumstances.

Kayse also argues that the ALJ erred in failing to find that Kayse's depression was a severe impairment. In support, she points to testimony that Kayse sometimes did not shower for weeks or get out of bed, she had been raped a number of times and had trouble concentrating and was impulsive, her mother had temporary custody of Kayse's children, and Kayse spent much of her time on the couch. The ALJ did discuss Kayse's mental impairments, concluding that her bipolar disorder and anxiety were severe impairments. (R. at 31). The ALJ reviewed the report by psychiatrist Eggerman, who diagnosed Kayse with a mood disorder and personality disorder, and as having no depressed affect. (R. at 31, 230-36). The ALJ also discussed the Hamilton County Mental Health Board report which indicated that Kayse continued to experience depression and mania, and Kayse's diagnoses were bipolar and cannibas abuse by history. (R. at 31, 293). The ALJ noted that Kayse had stated that her medication was decreasing her depressive episodes in frequency and duration. (R. at 32, 305).  Kayse does not point to any medical source indicating that depression was a severe impairment which caused Kayse to experience

---

[3]Listing 11.02 (convulsive epilepsy) is satisfied when the claimant has grand mal or psychomotor seizures, documented by detailed description of a typical seizure pattern, including all associated phenomena which occur more frequently than once a month in spite of at least 3 months of prescribed treatment. *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 11.02.  Listing 11.03 (nonconvulsive epilepsy) is satisfied when the claimant has petit mal, psychomotor, or focal seizures documented by detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. *Id.*, Listing 11.03.  Kayse does not contend that her impairment satisfies Listing 11.03.

more limitations in her ability to function than those attributed to her other mental impairments. The ALJ credited Kayse's mental impairments by limiting her RFC to simple, routine, repetitive work that involved no contact with the general public and only minimal contact with coworkers. (R. at 33, 35).

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").  An ALJ's decision is sufficient if, as is true in this case, "it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir. 2003).

In determining Kayse's continued eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Kayse's age, education, and work history; (2) Kayse's history of diagnoses, treatment, medications, and evaluations; (3) Kayse's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of a vocational expert.

There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. The ALJ discussed the evidence and explained her rationale for accepting and rejecting the various opinions of record. As noted above, the court cannot reweigh the evidence. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Kayse's physical and mental impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated her assessment of the evidence and there was substantial evidence to support the ALJ's determination that Kayse was no longer disabled as of August 1, 2002.

### III. CONCLUSION

There was no reversible error in the determination of Kayse's continued eligibility for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Kayse is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date: 07/10/2007

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana